## Sully *v.* Childress.

### (*Knoxville.* November 21, 1900.)

1. BILLS AND NOTES. *Makers of, become sureties, when.*

   The relation of the makers of a note is that of sureties to one who has assumed its payment for them, and likewise to one who, after such assumption and with knowledge of it, takes an assignment of the debt. (*Post, pp. 110, 111.*)

2. SAME. *Release of sureties by extension of time for payment.*

   The sureties on a note are not released by reason of the creditor's agreement with the principal maker to extend the time of its payment for a fixed and definite period beyond maturity, without their consent, made upon consideration of payment of part of the note at or after it became due, although the payment, made pursuant to such contract, may have been made to the creditor's agent for collection and credited on the note before its maturity. (*Post, pp. 112–115.*)

   Cases cited: Bank *v.* Matson, 99 Tenn., 394; Foy & Dulaney *v.* Sinclair, 93 Tenn., 296; Howell *v.* Sevier, 1 Lea, 360; Wilson *v.* Langford, 5 Hum., 320; White *v.* Summers, 1 Bax., 154; Bank *v.* Shook, 100 Tenn., 436; McKamey *v.* McNabb, 97 Tenn., 237.

3. LIMITATIONS, STATUTE OF. *Absences from State must be pleaded.*

   If the plaintiff proposes to rely upon the defendant's absence from the State to defeat the plea and bar of the statute of limitations, he must plead the fact more specifically than to aver that his cause of action, "while apparently barred by the statute of limitations, is not in fact barred, but in full force." (*Post, pp. 115–120.*)

   Cases cited and approved: Cross *v.* Disney, 95 Tenn., 595; Whaley *v.* Catlett, 103 Tenn., 348.

   Cited and overruled: Criner *v.* Cherry, 3 Shann. Cas., 496.

4. SUPREME COURT. *Remand for amendment of pleadings, when.*

   This Court will remand a cause for amendment of pleadings when it appears that a party has followed and been misled in

making up the issues by a reported opinion of this Court which the Court deems it proper to overrule. (*Post, p. 120.*)

## FROM WASHINGTON.

Appeal from Chancery Court of Washington County. John P. Smith, Ch.

Kirkpatrick, Williams & Bowman for Sully.

Isaac Harr for Childress.

McAlister, J. This bill was filed to collect balance due on a note for $750 executed by defendants, B. F. Childress and J. H. Preas, to the Carnegie Land Co., and by the latter company indorsed to Alfred Sully, the present complainant. This note was part of the consideration to be paid by Childress and Preas for four lots purchased by them from the Carnegie Land Co., for the sum of $3,000. Two deeds were executed and a lien retained by the company for the balance of purchase money.

It appears that at the time Preas and Childress received these deeds from the land company they had negotiated a sale of the lots to one Selden Langley at a profit of $1,000, which was paid in cash. Langley also made, it appears, the cash payments to the land company due from

Preas and Childress, and Langley also assumed payment of deferred purchase notes.

It further appears that Preas and Childress executed a deed to Langley for the four lots, in which they retained a lien for their own indemnity.

Langley, it appears, failed to pay one of the notes executed by Preas and Childress to the Carnegie Land Co., and thereupon this bill was filed for its collection.

As already stated, the suit is brought by Alfred Sully, to whom the Carnegie Land Co. indorsed the note. Suit as to Preas was dismissed.

The defendant, Childress, resisted the collection of the note upon two grounds—first, that he was released by an extension granted to Langley, and, second, because the note sued on is barred by the statute of limitations of six years.

The note on its face appears to have been executed by Jas. H. Preas and B. F. Childress, as makers, to the Carnegie Land Co. Upon the back of the note appears the following indorsement, viz.: "I assume and agree to pay the within note. Selden Langley." Again: "Pay to the order of Alfred Sully. Carnegie Land Co., by J. T. Wilder, Prest."

The Court of Chancery Appeals properly held, upon the facts and the law, that, as between all parties concerned, Langley was principal on the debt sued on, and Preas and Childress were sure-

ties. *Union Life Ins. Co.* v. *Hanford,* 143 U. S.

When the note in suit matured, December, 1890, it was owned by Alfred Sully. He also owned the other note of $750, maturing at the same time. On the 17th of March, 1891, Langley mailed his check for $1,200 to the Citizens' Bank of Johnson City, where the notes were deposited for collection. The bank applied $795 of this sum to take up one of the $750 notes, with interest thereon, and applied the balance of $405 on the note now in controversy, which left a balance of $390 and interest due on the latter note. It should be remarked that the $405 credit is dated March 19, 1891, one day prior to the maturity of the note.

The insistence made in the Court below and here was that Childress was released as surety on said note, for the reason there was a contract between Sully, the holder, and Langley, the principal, for an extension of 90 days, in consideration of the cash payment of $1,200 on the two notes, and that this contract was made and the credit paid before the maturity of the note.

It is well settled that if the creditor grant an extension of the time of payment upon a valid consideration, for a definite and fixed period, to the principal debtor, to the prejudice of the surety and without his consent, it will operate to release the surety from his liability. *Bank* v. *Matson,* 15 Pick., 394 ; *Foy & Dulaney* v. *Sin-*

*clair,* 9 Pickle. It is also well settled that the agreement between the creditor and principal debtor which will discharge the surety must be a valid and binding agreement, and one which presents a legal obstacle for the time to the prosecution of an action upon the original security. *Howell* v. *Sevier,* 1 Lea, 360; 5 Hum., 320. But where the principal in a note after maturity contracts with his creditor for delay without the knowledge of the sureties by paying part of the indebtedness as a credit, the contract is without consideration and will not bind the creditor or discharge the sureties. The promise by the party of payment is only part performance of his previous existent obligation. He does nothing more than he was already bound to do, and the party receiving the money or promise receives nothing in addition to what he was already entitled to receive under his contract. Such an agreement would interpose no obstacle in law to the enforcement of the original contract. *White et al.* v. *Summers et al.,* 1 Bax., 154; *Olmstead* v. *Latterman,* 150 N. Y., 315 (43 L. R. A., 685). A partial payment, however, made on a note before its maturity, is a good consideration for an agreement to extend the time for payment of the balance, and consequently discharges the surety. 24 Am. & Eng. Enc. of Law, 829, citing authorities. See, also, *Bank* v. *Shook,* 16 Pickle, 436. But in *McKamey* v. *McNabb,* 13

22 P—8

Pick., 237, it was said that payment of a portion of a debt before the expiration of the three days of grace did not amount to a vaild consideration to support an agreement for delay. It was held this defense was too technical and without any real merit.

The Court of Chancery Appeals, after an elaborate citation and discussion of the testimony, find as a fact that both parties had in mind the payment of the note at maturity, and not before maturity. The possibility of the monty being paid at the bank and applied before maturity (the day before) was not considered by either party. Here was, in substance, an understanding, as we infer from the facts, that at maturity a certain sum would be paid upon the debt, and the balance extended for 90 days. As a matter of fact, this sum was paid to an agent of the holder of the note at a distant place one day before maturity. That Court found that, while the bank in which the notes were deposited for collection had the right to receive and apply the money, it was not authorized to make any contract that would release the sureties, and that it would be a harsh application of the rule to say that a contract for delay under such circumstances amounted to an agreement for delay upon a binding consideration.

We concur with that Court in holding that a payment made by the bank the day before the maturity of the note, when the contract of the

holder and principal was that the payment should be made at maturity, would not release the sureties.

The next assignment of error is that the Court of Chancery Appeals should have held the note in suit barred by the statute of limitations. A more specific statement of this assignment of error is, viz.:

"This suit was brought August 3, 1898. The note was due and payable March 20, 1891. More than six years had, therefore, elapsed from the time the right of action had accrued on the note to the time suit was brought, and the Tennessee statute had completed the bar. This defense was made by answer and plea. Complainant introduced proof to the effect that defendant, Childress, was absent from the State of Tennessee a part of the time, and that for this reason the statute did not apply. Defendant, however, insists that absence from the State is not alleged in the bill, and there being no issue on this question, the proof is irrelevant. The bill is remarkable for its brevity. It alleges that complainant, as indorsee, sues the defendants as the makers of the note, exhibit 'A' to the bill. Said note, after demand, is unpaid, except to extent shown by credits indorsed. Said note, while . apparently barred by the statute of limitations, is not, in fact, barred, but in full force."

It will be observed that there is no allegation

of fact in the bill to bring the suit within any saving clause of the statute of limitations, but the pleader contents himself with a statement of a conclusion of law—namely, that the note is in full force. We are constrained to hold this pleading insufficient to have authorized the introduction of proof by complainant that defendant, Childress, was in fact absent from the State about one-third of the time the statute was running. The Court of Chancery Appeals, in taking a contrary view, were goverened by the case of *Criner* v. *Cherry,* 3 Shannon's Tenn. Cases, 496. The bill in that case was filed by the creditors of Robert Long, deceased, against his administrators and heirs at law, in the Chancery Court of McNairy County. It was alleged that insolvency of the estate had been suggested by the administrator at the March term, 1867, of the County Court; that the personal assets had been exhausted in the payment of debts, and that intestate owned certain lands which it was sought to subject to the payment of debts. The answer contested the claims of complainant on the ground that they were barred by the statute of limitations of two and a half and six years.

The point relied on by complainant in proof to save the bar of the statute was the fact that the Court of McNairy County had been closed for four years during the war. The Court, in a petition to rehear, used this language: "The sav-

ing of the bar of the statute might have been established by any evidence sufficient for the purpose, whether denied or not by the answer. The bill charges the existing indebtedness; the answer denies it, and relies on the statute of limitations. The years of the statute had passed, but de-defendants or complainants might by evidence show any fact or law which would tend to support his claim, and complainant may · show his claim not barred, whether it be that the statute was suspended by the closing of the Courts or by having filed his claim in Court, or suit brought therein in due time."

The case of *Criner* v. *Cherry* was decided in 1875, and, so far we are advised, it was reported for the first time in 3 Shannon's Cases, 496, published in 1899, and has not been cited in any subsequent case on the point now in issue. It is not supported by any authority, and is wholly irreconcilable with recent decisions of this Court.

This exact question arose in *Pratt* v. *Vattier,* 9 Peters, 405. Mr. Justice Story, who delivered the opinion of the Court, said, viz.: "In regard to the statute of limitations, it is clear that the full time has elapsed to give effect to that bar upon the known analogy adopted by Courts of Equity in regard to trusts of real estate, unless Bartle is within one of the exceptions of the statute by his nonresidence and absence from the State. It is said there is complete proof in the

cause to establish such nonresidence and absence. But the difficulty is, the nonresidence and absence are not charged in the bill, and, of course, are not denied or put in issue by the answer, and unless they they are so put in issue the Court can take no notice of the proofs; for the proofs, to be admissible, must be founded upon some allegations in the bill and answer. . . . . And the doctrine is now clearly established that, if the statute of limitations is relied on as a bar, the plaintiff, if he would avoid it by any exception in the statute, must explicitly allege it in his bill or specially reply it, or, what is the modern practice, amend his bill." See also Gibson's Suits in Chancery, page 336; Hick's Manual of Chancery Practice, page 142.

This rule of pleading was recognized and applied in the case of *Cross* v. *Disney,* 11 Pickle, 595. The Court said: "In the first place, the averment of the bill by which it was complainant's evident purpose to avoid the anticipated plea of the bar of the statute, by setting up a disability which would entitle her to its saving clause, falls far short of the requirement of correct pleading. It will be seen that complainant fails to state that she was a *feme covert* at the time the adverse holding of the defendant began, and that this condition of coverture continued until this suit began, or to a point of time within the saving of the statute. We think it may be taken

Sully *v.* Childress.

as a well established rule of practice that when the statute of limitations is relied on at law or in equity, ·and the plaintiff desires to bring himself within its saving, it is proper for him to set forth the facts specially. . . . . And the party thus seeking to avoid the effect of the statute by disability must not only aver that it existed when the cause of action accrued, but he must allege in his pleadings a continuance of it to a point of time when it would be a perfect answer to the bar."

So, in the case of *Whaley* v. *Catlett,* 19 Pickle, 348, it is held that where the plaintiff seeks to avoid the effect of the statute of limitations on the ground of concealment of defendant, the fraudulent action must be properly alleged. The Court said, viz.: "The statement in the declaration is that defendant fraudulently concealed from the plaintiff and the public the wrongful, willful, and malicious act. If this bill be held sufficient to charge the concealment of the cause of action, and not merely the evidence of the defendant's connection therewith, still it is fatally defective, in that it does not show that the cause of action was discovered within one year· next before the action was brought. The declaration clearly implies that it has been discovered, but does not disclose when. In order to take the case out of the statute, it must be alleged and shown that

the cause of action was concealed to a time within one year next before the suit was brought, and discovered within the year."

These cases announce the correct rule of pleading, and must govern the determination of the present case.

The case of *Criner* v. *Cherry,* 3 Shannon's Cases, 496, to the extent it holds that a suspension of the statute of limitations may be shown by proof, without direct issue made by the pleadings, is not authority, and is overruled.

It follows that the decree of the Court of Chancery Appeals, as well as that of the Chancellor, in favor of the complainant, adjudging liability against the defendant on the note in suit, are both erroneous, and the same are reversed. But, inasmuch as complainant had a right to rely on the authority of *Criner* v. *Cherry* in formulating his pleadings, and has been misled thereby to his prejudice, the Court is of opinion this is a proper case for remandment for an amendment of the bill. It is, accordingly, so ordered, but complainant will pay all costs of this Court and of the Court below.