August 25, 1997

<u>FOR PUBLICATION</u>

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FILED**

**August 25, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

HAROLD E. STEELE, DON PETERSON,   (
REV. DAVID MAYNARD, HARMON WRAY,   (
AND REV. TOM BAKER, JR.,   (
INDIVIDUALLY, AS MUNICIPAL TAX   (
PAYERS AND AS MEMBERS OF AMERICANS (
FOR RELIGIOUS LIBERTY,   (   No. 01S01-9607-FD-00136
   (
     Plaintiffs-Respondents,   (
   (
   (   On Certified Question of Law
v.   (   from the United States District
   (   Court for the Middle District
   (   of Tennessee
THE INDUSTRIAL DEVELOPMENT BOARD   (
OF THE METROPOLITAN GOVERNMENT OF  (   Hon. John T. Nixon, Chief Judge
NASHVILLE AND DAVIDSON COUNTY; THE (   No. 3-91-0421
METROPOLITAN GOVERNMENT OF   (
NASHVILLE AND DAVIDSON COUNTY;   (
DAVID LIPSCOMB UNIVERSITY; SOVRAN  (
BANK, A NATIONAL BANKING   (
ASSOCIATION; AND SOVRAN BANK/   (
TENNESSEE, A TENNESSEE BANKING   (
CORPORATION,   (
   (
     Defendants-Petitioner.   (

For Defendant/Petitioner               For Plaintiffs-Respondents:
<u>David Lipscomb University</u>:

                                       Joseph H. Johnston
Bradley A. MacLean                     Nashville
Stephen H. Price
Farris, Warfield & Kanaday
Nashville

For Defendant/Sovran Bank & Sovran
Bank/Tennessee:

Robert J. Warner, Jr.
Boult, Cummings, Conners & Berry
Nashville

For Industrial Development              For Metropolitan

Board of Nashville and Davidson County:

Bobby D. Davis
McKinney & Davis
Madison

For Amicus Curiae State of Tennessee:

Charles W. Burson
Attorney General & Reporter
Nashville

Michael W. Catalano
Associate Solicitor General
Nashville

Government of Nashville and Davidson County:

James L. Charles
James L. Murphy, III
Paul D. Krivacka
Nashville

For Amicus Curiae Tennessee Municipal League and Tennessee County Services Association:

George E. Barrett
Phillip A. Purcell
Barrett, Johnston & Parsley
Nashville

## O P I N I O N

REID, J.

Pursuant to Rule 23, Rules of the Tennessee Supreme

Court, the Court has accepted the following question of law certified by the United States District Court for the Middle District of Tennessee:

> Whether bonds which contain a "liquidity demand" provision, giving bondholders the right to collect the face value of the bonds upon giving seven (7) days notice, are bonds "maturing in six (6) months or less from the date of issuance" within the meaning of Tenn. Code Ann. § 67-2-101(1)(B)(i), such that the interest on the bonds is exempt from the Tennessee "Hall Income Tax" under Tenn. Code Ann. § 67-2-101 <u>et seq</u>.

The decision is that interest on the bonds is subject to the State income tax.

I

In the federal court action, the plaintiffs, as municipal taxpayers, are challenging the constitutionality of the issuance by the Industrial Development Board of the Metropolitan Government of Nashville and Davidson County ("Industrial Development Board") of industrial development bonds in the amount of fifteen million dollars ($15,000,000) to finance construction of facilities on the campus of the defendant, David Lipscomb University ("Lipscomb"), a private, liberal arts university in Nashville affiliated with a religious denomination known as the Church of Christ. The plaintiffs contend that the issuance of the bonds violates the Establishment Clause of the First Amendment to the Constitution of the United States.

-3-

The District Court has held that in order to establish standing to bring the federal court action, the plaintiffs must show that the issuance of the bonds by the Industrial Development Board has caused a direct or indirect loss to the municipal fisc. The plaintiffs contend that if the bonds had not been issued as "tax exempt" bonds by the Industrial Development Board,[1] then the interest earned on the bonds would be subject to the State income tax, and a portion of the tax revenue collected from bondowners residing in Metropolitan Nashville and Davidson County would be remitted to the municipality pursuant to Tenn. Code Ann. § 67-2-119(b) (1994).[2] The plaintiffs assert that the resulting loss of revenue is a direct financial loss which gives them standing to prosecute the suit.

Lipscomb contends that the interest earned on the bonds is excluded from the State income tax because, by virtue of a liquidity demand provision in the bond documents, they are bonds "maturing in six (6) months or less from the date of issuance" within the meaning of Tenn. Code Ann. § 67-2-101(1)(B)(i) (1994). Lipscomb therefore asserts that, even if the instruments are not lawfully issued industrial bonds, the plaintiffs cannot show any

---

[1] Interest from lawfully issued industrial development bonds is exempt from the State income tax. See Tenn. Code Ann. §§ 7-53-305(a) (1992); 67-2-104(e) (Supp. 1996); 67-5-205(a)(2) (1994).

[2] Tenn. Code Ann. § 67-2-119(b) provides:

> Where a taxpayer residing within the corporate limits of any municipality pays a tax imposed at the rate of six percent (6%) per annum, then three eighths (3/8) of the net tax collected from such taxpayer shall be returned to the city within which such taxpayer resides.

loss to the municipal fisc, and, therefore, they do not have standing to pursue the federal action.

The bonds in this case were issued pursuant to a series of voluminous documents. Key among these documents were: a Master Bond in the original principal amount of $15,000,000 issued pursuant to a Trust Indenture between the Industrial Development Board as the issuer and Sovran Bank, N.A., as the bond trustee, bond registrar, paying agent and rate agent; a Loan Agreement and Promissory Note under which Lipscomb obligated itself to provide the funds necessary for the Industrial Development Board to repay the bonds; a Deed of Trust and Security Agreement under which Lipscomb pledged its real estate and certain other property to secure its obligations and the repayment of the bonds; a Letter of Credit Reimbursement Agreement under which Sovran Bank/Tennessee guaranteed the repayment of the bonds and Lipscomb's obligations; and an Official Statement/Offering Circular through which the bonds were marketed to members of the public in denominations of $1,000 or any integral thereof, with a minimum holding of $5,000.

The bonds were issued effective as of January 31, 1991, with a stated maturity date of May 1, 2020. However, the owner of each of the bonds has a right to demand earlier payment under a provision in the Master Bond referred to as "liquidity demand." The Official Statement/Offering Circular provides:

> Any Bondowner may require his Bonds to be purchased on any Business Day in whole or in

any multiple of $1,000, subject to holding an Authorized Denomination of at least $5,000, upon a "Liquidity Demand" from such owner to the Bond Registrar. The Bondowner must give telephonic notice to the Bond Registrar of a Liquidity Demand by not later than 11:00 a.m., Eastern Time, on the 7th day prior to the date such purchase is demanded (the "Liquidity Date"). After giving such notice, the Bondowner shall be deemed to have surrendered such bonds irrevocably to the Bond Registrar on the Liquidity Date. Bonds subject to a Liquidity Demand shall either be remarked by the Remarketing Agent or purchased pursuant to a draw on the Letter of Credit.

According to the Master Bond, during the initial variable rate period, the bondowners will not receive certificates representing their ownership interests in the bonds. The beneficial ownership of the bonds will be evidenced only by book entries in the ownership records maintained by the bond registrar, who also holds the Master Bond. At any time, Lipscomb has the option to terminate the variable interest rate feature on all the bonds and convert the interest to a fixed rate. After the conversion date, the Master Bond may be exchanged for certificated bonds in fully registered form.

## II

The State imposes an income tax on the "interest on

bonds."[3]  Whether interest on the bonds in this case is subject to the State income tax depends upon the statutory definition of bond. That definition, in pertinent part, is:  "'Bond' means all obligations . . . evidenced by an instrument whereby the obligor is bound to pay interest to the obligee . . . [but] 'Bond' does not include: [o]rdinary commercial paper, trade acceptance, etc. maturing in six (6) months or less from the date of issuance."[4] Tenn. Code Ann. § 67-2-101(1) (1994).

In determining the meaning of "bond," the Court is guided by several rules of statutory construction.  Legislative intent is to be ascertained primarily from the natural and ordinary meaning

---

[3]Tenn. Code Ann. § 67-2-102 (1994) provides:

An income tax in the amount of six percent (6%) per annum shall be levied and collected on incomes derived by way of dividends from stocks or by way of <u>interest on bonds</u> of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources above enumerated, except as hereafter provided.

(Emphasis added.)

[4]Tenn. Code Ann. § 67-2-101(1) provides:

(A) "Bond" means all obligations issued by any person, firm, joint-stock company, business trust or corporation organized and doing business under the laws of this state, or any other state, evidenced by an instrument whereby the obligor is bound to pay interest to the obligee regardless of whether the obligor is doing business in this state, or whether the obligation under the terms of which the interest accrues is a mortgage or lien on property located in this state or beyond the jurisdiction thereof;

(B) "Bond" does not include:

(i) Ordinary commercial paper, trade acceptance, etc., maturing in six (6) months or less from the date of issuance. . . .

of the language used in the statute, without any forced or subtle construction that would extend or limit its meaning. State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993); Worrall v. Kroger Co., 545 S.W.2d 736, 738 (Tenn. 1977). The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. Tennessee Growers, Inc. v. King, 682 S.W.2d 203, 205 (Tenn. 1984). The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. First Nat'l Bank of Memphis v. McCanless, 186 Tenn. 1, 207 S.W.2d 1007, 1009-10 (1948). Although tax statutes must be liberally construed against the taxing authority, exemptions are strictly construed against the taxpayer, who has the burden of proving entitlement to the exemption. Cape Fear Paging Co. v. Huddleston, 937 S.W.2d 787, 788 (Tenn. 1996); Covington Pike Toyota, Inc. v. Cardwell, 829 S.W.2d 132, 135 (Tenn. 1992).

The issue stated in the certified question and the issue focused on by the parties is actually a secondary issue. The certified question, as stated, fails to recognize that the exemption under Tenn. Code Ann. § 67-2-101(1)(B)(i) is not for bonds but only for "[o]rdinary commercial paper, trade acceptance, etc., maturing in six (6) months or less from the date of issuance." (Emphasis added). Lipscomb asserts that "although the Lipscomb Bonds have a stated maturity date of May 1, 2020, they

-8-

function for all intents and purposes as demand instruments, and any interest on the Bonds is excluded from the Hall Income Tax." The taxpayers respond that "the Lipscomb Bonds contain numerous terms and conditions that clearly contemplate a future maturity date of May 1, 2020. Therefore . . . such bonds cannot be demand or short term instruments maturing in six months or less of the date of issuance and are therefore not exempt from the Hall Income Tax."

The first issue is not whether the bonds mature within six months. The first issue, and the only issue that need be resolved in this case, is whether the bonds are "bonds" within the meaning of the statute or if they are some other type of obligation, the interest on which may be exempt from taxation. If they are "bonds" within the meaning of the statute, there is no applicable exemption and interest on the obligations is taxable. If they are ordinary paper, trade acceptances, or similar instruments maturing in six months or less from the date of issuance, then they are not bonds within the meaning of the statute. The statutory provision regarding maturity date becomes material only if the instruments are found to be commercial paper, trade acceptances, or other similar instruments.

The terms "commercial paper" and "trade acceptance" are not defined in the tax statutes. However, both terms have well defined meanings. Black's Law Dictionary defines "commercial paper" as:

> Bills of exchange (*i.e.*, drafts), promissory notes, bank-checks, and other negotiable instruments for the payment of money, which, by their form and on their face, purport to be such instruments. Short-term, unsecured promissory notes generally issued by large, well-known corporations and finance companies. U.C.C. Article 3 is the general law governing commercial paper.

Black's Law Dictionary 271 (6th ed. 1990). "Trade acceptance" is defined as:

> A bill of exchange or draft drawn by the seller of goods on the purchaser and accepted by such purchaser. Once accepted, the purchaser becomes primarily liable to pay the draft. See U.C.C. § 3-413(1).

Id. at 1493. The bonds in this case are not commercial paper, trade acceptances, or similar instruments. The form and terms of the bonds are not consistent with ordinary commercial paper or trade acceptances within the meaning of the exemption statute. Nor can the term "etc." in Tenn. Code Ann. § 67-2-101(1)(B)(i) be construed to bring the bonds within the coverage of the exemption statute. Use of the term "etc." at the end of a series of terms is construed by courts to import other things or purposes of like character with those already named. Doty v. American Tel. & Tel. Co., 123 Tenn. 329, 130 S.W. 1053, 1055 (1910).

The bonds in this case are obligations evidenced by instruments whereby the obligor is bound to pay interest to the

obligees, and, consequently, are "bonds" within the meaning of the statute.

The Court observed in <u>Union & Planters Bank & Trust Co. v. Fort</u>, 170 Tenn. 285, 95 S.W.2d 39 (1936), that the definition of "bond" for tax purposes is broader than its ordinary meaning in a financial context.

> The word "bond" is commonly understood in financial circles to be the obligation of a state or the subdivision of a state, or a private corporation, represented by a certificate for the principal, and by detachable coupons for the current interest. Ordinarily, the meaning expressed by the word "bond" would not extend to and include all interest-bearing obligations of persons, firms, and corporations. Therefore, in order to give the word a broader meaning, some definition was necessary.

<u>Id.</u> at 40. In <u>Shields v. Williams</u>, 159 Tenn. 349, 19 S.W.2d 261 (1929), the Court addressed the constitutionality of various classifications of incomes to be taxed under this statute, and commented upon the rationale for excluding certain short term obligations from the definition of "bond." The Court stated:

> The only debatable classification arises from the proviso contained in section 4 of chapter 86 of the Acts of 1929, which excludes from the obligations described as bonds in that section "ordinary commercial paper, trade acceptances and rent notes, etc., maturing in six months or less from the date of issuance."
>
> . . .
>
> We think such classification is

-11-

> permissible. Short-term loans are employed in merchandising, manufacturing, and trade. Such business activities produce wealth and create new taxable values. On the other hand, the proceeds of long-term loans are used ordinarily for investment, to acquire property, not to produce property, not to create new taxable values.

Id., 19 S.W.2d at 267.

Lipscomb cites Shackleford v. Olsen, 675 S.W.2d 171 (Tenn. 1984) in support of its argument that interest on the bonds is exempt from the Hall Income Tax. In that case, a corporation issued instruments of indebtedness bearing interest to its employees who lent money to the company under an employee investment program. The notes were payable thirty days after demand. The Court concluded that the exemption applied because the notes effectively were demand notes, which are considered to mature on the date of issuance. Id. at 173-74. Shackleford is distinguishable from the present case because the only issue in Shackleford was the time within which the instruments matured. In Shackleford, the Commissioner of Revenue had denied exemption under Tenn. Code Ann. § 67-2-101(1)(B)(i) solely upon the basis that the notes, by their terms, did not mature within six months or less from their date of issue. The Commissioner of Revenue did not question the fact that the notes were "ordinary commercial paper" such as usually pass in trade but denied that they matured within six months. Id. at 173. Whether the instruments mature within six months would become material in the case before the Court only if the Court should conclude that the bonds are commercial paper,

trade acceptances, or similar instruments.  The right to demand payment under the liquidity demand provision of the bonds does not alter the conclusion that they are bonds, not ordinary commercial paper, trade acceptances, or similar instruments.  The Court, therefore, does not reach the issue of whether the bonds mature within six months for purposes of the exemption in Tenn. Code Ann. § 67-2-101(1)(B)(i).

**III**

In response to the certified question, the bonds in this case are "bonds" within the meaning of Tenn. Code Ann. § 67-2-101(1)(A) and are not commercial paper, trade acceptances, or a similar type of instrument.  Accordingly, interest on the bonds is subject to State income tax.

The Clerk will transmit this opinion to the United States District Court for the Middle District of Tennessee and counsel for the parties in accordance with Rule 23, Section 8 of the Rules of the Tennessee Supreme Court.  The costs in this Court will be taxed to the petitioner, David Lipscomb University.

_____
Reid, J.

Concur:

Anderson, C.J., Drowota, Birch, and
    Holder, JJ.